BENJAMIN STURDIVANT et al. *v.* G. F. NEILL et al., Guardians, &c.

S. and F., with their husbands, filed their petition in the probate court, for the purpose of compelling their guardians to make a final settlement of their accounts as such guardians, and to deliver into their possession the real and personal estate of petitioners under the control and management of said guardians. The wives of petitioners are the children and heirs at law of M. T. P., deceased, who, at the time a citizen of this State, left a will recorded in the county court of Knox county, Tennessee, where he died; an authenticated copy of said will was produced by the guardians, and by the provisions of which will it is insisted that the property, both real and personal, of the testator is confided to the management and control of said guardians until the children of deceased shall severally arrive at the age of twenty-one years; but the wives of petitioners insist, that although they have not arrived at the age of twenty-one years, yet, in virtue of their marriages, they are entitled to the immediate possession of the said property. *Held*, that there is nothing in the language of the will, either expressed or implied, to prevent the children of deceased from taking the title alone of the property by descent and distribution under the statute.

A will bequeathing personal property can have only such operation, and no more, as is given to it by the laws of the testator's domicil at the time of

Sturdivant et al. *v.* Neill et al.

his death, and the testator's capacity to make a will must be determined by the same laws at the time the instrument is executed.

The domicil of the testator at the time of death being in this State, the property upon which his will was to operate being here, his capacity to make the will must be determined alone by the laws here. *Held*, that it can only have such operation as the laws of this State give it.

Our laws designate the court to adjudicate upon these questions; and until the court designated shall have adjudicated the question that the deceased did, in fact execute the original of the authenticated copy of the will, according to the forms and ceremonies of the laws of this State, it cannot, in a legal sense, be considered to be the testator's last will and testament; and cannot as such be offered in evidence for the purpose of defeating the title of those who take the estate under the statute of distributions; a title which the law favors, and can only be required to yield to a valid testamentary disposition, giving a different destination to the property.

The probate court of this State, in admitting the copy of the will to record, only undertook to give effect and efficiency to the foreign judgment, and of course its action determined no more, as to the validity of the will, than was determined by the foreign tribunal, whose judgment, as appears by the record, was regulated, not by the laws of this State, but by those where the will was made.

The county court in Tennessee could only exercise such duties in regard to the will as it derived from the laws of comity; and when invoked, it will become its duty to administer the laws of this State in the particular instance, so far as it may be necessary to judge of the validity of the will, or the rights of the parties under it.

The statute (Hutch. Co. 605, § 25) in relation to the admission to probate, within this State, of authenticated copies of wills proven according to the laws of the United States or territories, or of any foreign countries, is not applicable to wills made by citizens domiciled in this State, but only to wills made according to the laws of some other State or country.

The statute only permits our courts to receive the authenticated copies of wills as evidence of their due execution, because the question had been determined by courts having jurisdiction, and whose judgments were based upon the laws of their own country in determining their validity.

The courts of this State, in adjudicating upon wills which depend solely for their validity upon our laws, must look only to the law of which they are judicially informed, and not to the laws of other States. *Held*, that the court below erred in receiving the authenticated copy of the will as evidence under the facts as presented.

O N appeal from the probate court of Carroll county; Hon. W. W. Whitehead, judge of the probate court of Carroll county.

The opinion of the court contains a full statement of the facts of the case.

*Sheppard* for appellants.

*Brooke* on the same side.

. *Cothran* for appellees.

There are two points in this case arising on the construction of the will of M. S. Purnell, deceased, and the agreed state of facts in the case.

The first clause of the will directs that the " sons be educated until they graduate at some respectable college, and that the daughters be taken to Salem in North Carolina, and be placed in the female institution of that place until they complete their education;" and that all expenses, &c. be paid by the executors, &c.

The will then provides that neither of the children receive any portion of the property, more than a necessary subsistence, until they acquire such education.  But should any casualty prevent either of the children from receiving such education, they are still to receive a full share of the estate.

Third clause is in these words: " My will is, that on receiving an education, as they respectively come to legal age, they each receive an equal portion of my estate."

It is admitted that the petitioners, Elizabeth Fultz and Eliza Sturdivant, are the children of M. S. Purnell, and the same named in the will; that they are not of the age of twenty-one years; Elizabeth Fultz has completed her education at Salem in North Carolina, as directed by the will; and that Eliza has not, being prevented only by her marriage.

The defendants hold the estate only as testamentary guardians under the order of the probate court, &c.

The term legal age, used in the will, is too well understood and settled to require either argument or authorities to show that by it is intended twenty-one years.

The statute referred to by counsel for appellants (Hutch. Co. 506) can have no application in this case. It can apply only in cases where there is no will, or where the provisions of the act do not conflict with the positive directions of the testator's will.

It is believed that in no event can either of the children receive any portion of their father's estate under the will, until he or she attain the age of twenty-one years. Nor can either of them receive his or her share of the estate, until he or she complete a course of education as directed in the will.

The language of the will is, "In order the more certainly to secure my children the kind of education indicated above, it is further my will, that neither of them receive any portion of my property, more than a necessary subsistence, until they acquire such education; but should any casualty prevent either of my children," &c.

The only condition upon which they can receive any portion of the estate over a " necessary subsistence," until they complete their education, as directed in the will is, being prevented by " casualty." Is marriage such a casualty as to entitle the party to receive her estate? I think not. I understand the word " casualty," as used in the will of M. T. Purnell, to mean either mental or physical inability to acquire such education, by the act of God, accident, or misfortune. But surely marriage is not a casualty, nor could the testator have intended, by the word " casualty," to mean marriage. It is believed that the petitioner, Eliza, must both complete her education, as indicated by the will of her father, and attain the age of twenty-one years, before she can recover her portion of her father's estate; with this view, I think the judgment of the probate court must be affirmed on both points.

Mr. Justice FISHER delivered the opinion of the court.

The petitioners, Eliza Sturdivant and Elizabeth Fultz, jointly with their respective husbands, filed their petition in the probate court of Carroll county, for the purpose of compelling their guardians, the appellees, to make a final settlement of their

accounts as such guardians; and to deliver into the possession of said petitioners, their real and personal estate, under the control and management of the appellees.

The petitioners, Eliza and Elizabeth, are children of Micajah T. Purnell, deceased, and as such, claim the property as heirs at law and distributees of his personal estate; and insist, that although they have not arrived at the age of twenty-one years, yet in virtue of their respective marriages, as stated in the petition, they are entitled to the immediate possession of their said property. The fact being admitted that they are the children of the deceased, must be held to create, at least, a presumption that they take by descent and distribution his real and personal estate; and the fact also being admitted that the property has passed into the hands of their guardians, is sufficient evidence, that the title thus acquired has been consummated by actual distribution itself.

It will at once be seen from this brief statement of the case, that the legal presumptions arising upon every fact stated, are in favor of the appellants; and, as a matter of course, they were entitled to a decree according to the prayer of the petition, unless something shall appear in the testimony offered in the defence to change this aspect of the case.

This brings us to the consideration of the appellees' testimony; which consists of an authenticated copy of the last will and testament of Micajah T. Purnell, admitted to probate in the county court of Knox county, and State of Tennessee. By the provisions of which will, the appellees insist that the property, both real and personal, of the testator, is confided to their management and control, until his children shall severally arrive at the age of twenty-one years. This would doubtless be our construction of the will, if it were before us merely for construction. There is nothing in its language, either expressly or by necessary implication, to prevent his children, so far as the title alone is concerned, from taking the property by descent and distribution, according to the statute relating to these subjects. Inasmuch, therefore, as it requires an express devise, or one arising by implication so strong that an intention to the contrary cannot be supposed, 4 Jarman, 465, inasmuch as the title

14 *

of the distributee in this State, receives, to say the least, as much favor as the title of the heir at law in England, and inasmuch as the law favors the vesting of estates, Ib. 726, we would be inclined to hold, that it was not the testator's intention, by his will, to interfere with the title which his children would take under the law in his property, but only to make his will operative so far as the possession and power to manage the estate might be concerned for a certain period of time. It was not necessary that the executors should be clothed with the title merely for this purpose; and where the title is not expressly devised, and the executors are only required to perform certain duties, and to exercise certain powers, the law will permit them to take by implication only such title or interest in the estate as may be necessary to accomplish the end designed by the testator.

But, as before intimated, the will is not properly before us for construction. A more important question presses itself upon our consideration; and that is, whether the authenticated copy of the will, as certified from the county court in Tennessee and admitted to record in the probate court of Carroll county, can be received as evidence against the appellants, under the facts as disclosed by the record. Purnell, the alleged testator, was, both at the date of his will and at his death, a citizen of this State, domiciled in Carroll county. While on a journey to the State of North Carolina, he was taken sick in the said county of Knox, where he made his will, where he died, and where his will was, in the language of the record, proved in the county court of that county, and admitted to probate according to the laws of Tennessee.

The question on this state of the case, and which will merge all others, is, whether that court had jurisdiction over the subject-matter. If so, then it must be admitted that its judgment in the premises could be legally certified to the probate court of Carroll county, which would be bound to give to it such weight and importance as it received in the State of Tennessee, in virtue of whose laws the judgment had been pronounced. The solution of this question must depend mainly upon one of two propositions, — whether a will must be made with reference to

the laws of the testator's domicil, or of the place where it is made, if beyond the limits of his own county. The earliest decision on this subject in the United States, was made by the supreme court of Pennsylvania, in the year 1808. In that case, it appeared that " a foreign testator, domiciled abroad, had made a will of his personal estate, invalid according to the law of his domicil, but valid according to the law of Pennsylvania;" and the question was whether it was valid to pass personal property situate in Pennsylvania. The court decided that it was not, and asserted the general doctrine that a will of personal estate must, in order to pass the property, be executed according to the law of the place of the testator's domicil at the time of his death. If void by that law, it is a nullity everywhere, although it is executed with the formalities required by the law of the place where the personal property is locally situated. The court asserted, that in this respect there was no difference between cases of succession by testament and by intestacy. *Dessesbats* v. *Berquiers*, 1 Binn. 336; Story's Conflict of Laws, § 461, p. 394. Whatever doubts may have existed at one time on the subject, it is now finally settled, that the law of the domicil universally prevails, as to successions and wills of movables in other countries. *Bempde* v. *Johnstone*, 3 Ves. 198. The Lord Chancellor in that case, said that all questions of succession are, in their nature, questions of positive law. This expression, as we have seen by the authorities above quoted, relates as well to successions by testament as to successions by intestacy. The rule is founded partly in necessity and partly in policy and convenience, that there should be but one law on the subject to be consulted, and as every man is presumed to understand best the law of his domicil, it is but reasonable to suppose that we will consult it in making a testamentary disposition of his estate. It may be safely stated as a correct result deducible from all the authorities sanctioned by reason, convenience, and public policy, that a will bequeathing personal property can have only such operation, and no more, as is given to it by the laws of the testator's domicil at the time of his death. It may also be stated as equally well settled, that

the testator's capacity to make the will must be determined by the same laws, at the time the instrument was executed.

Applying, then, these rules to the question under consideration, there would seem to be but little difficulty in disposing of it.

The will has only such operation as the laws of Mississippi give to it; the property upon which it was intended to operate is situate here; the testator's domicil was here; and his capacity to make the will must be determined alone by our laws. These laws designate in the clearest manner the court to adjudicate upon these several questions, and until the court thus designated shall have adjudicated the question which precedes all others, to wit, that the deceased did in fact execute the original of the authenticated copy according to the forms and ceremonies of the laws of Mississippi, it cannot, in a legal sense, be said to be his last will and testament, and cannot, as such, be offered in evidence for the purpose of defeating the title of those who take the estate under the statute of distributions; a title, as we have seen, which the law favors, and which can only be required to yield to a valid testamentary disposition, giving a different destination to the property. It cannot for a moment be plausibly argued, that the original will has been established according to these rules. The only proof we have of its execution is the action of the county court in Tennessee. The probate court of Carroll county, by admitting the copy to record, only undertook to give effect and efficacy to the foreign judgment, and of course its action determined no more as to the validity of the will, than was determined by the foreign tribunal, whose judgment, as appears by the record, was regulated, not by the laws of Mississippi, by which the capacity of the testator to make it had to be tested, but by the laws of Tennessee. The county court in Tennessee could exercise only such duties in regard to the will, as it derived from the laws of comity; and when its action shall be invoked according to these laws, it will become its duty to administer the laws of Mississippi in the particular instance, so far as it may be necessary to judge of the validity of the will or the rights of parties under it, and not the laws of

Sturdivant et al. *v.* Neill et al.

Tennessee. On this branch of the case, it is only necessary to state that there is not the slightest evidence showing that the will has ever been proved as required by the laws of this State.

But it is said that the action of the court in Tennessee may be sustained under the twenty-fifth section of the statute of 1821, Hutch. Co. 605, which is in these words, to wit, " authenticated copies of wills proved according to the laws of any of the United States, or the territories thereof, or any country out of the limits of the United States, and touching or concerning estates within this State, may be offered for and admitted to probate in said courts." This law must be continued with reference to the whole law on the subject of wills. It has no application to wills made by citizens domiciled in this State, but only to wills made according to the laws of some other State or country. The law merely permits our courts to receive the authenticated copy as evidence of the due execution of the will, because the question has already been decided by a court having jurisdiction over the subject-matter, and whose judgment was based upon the law of its own country in determining the validity of the will. Our courts decide nothing more as to the validity of the instrument than was decided by the foreign tribunal; and if it had no jurisdiction over the subject, or power to make the record, it follows as a natural consequence, that the courts of this State can take no jurisdiction of the copy of such record, upon the principles already stated, that they lend their aid to carry into execution a foreign judgment, and not to decide the original question. They in all such cases make but one inquiry, and that is, as to the jurisdiction of the foreign tribunal, which pronounced the judgment, which, if valid, according to the foreign law, it will be equally so in this State, unless it shall be shown that the foreign law so far conflicts with our policy, as to relieve our courts from giving to it any operation within the limits of the State.

Again, the object of proving a will is, to ascertain whether it has been executed according to law. To determine this, the court must look alone to the law, according to the forms and solemnities of which the instrument was required to be made. In this case the testator derived his power to make a will from

the laws of Mississippi, and the record shows that the will has been proved according to the laws of Tennessee.

How is a court to learn from this evidence that the will was executed according to the laws of Mississippi, by which its validity can alone be tested? The court in such case would have to inform itself as to the laws of Tennessee on the subject, and then ascertain whether they were in their requirements similar to those of Mississippi, and in this way make a compliance with one a compliance with the other. This circuity of proceeding was not intended by the law. Our courts, in adjudicating upon wills which depend solely for their validity upon our law, must look only to that law of which they are judicially informed, and not to the laws of another State, which can have no influence either way on the decision of the question.

If we give to this statute the broad construction contended for, that wills which must be executed according to the solemnities of our laws, may, nevertheless, be proved according to the laws of any other country, we, in effect, adopt the laws of that country in the particular case, and allow them to decide the validity of the instrument. This was never designed by the legislature. The statute was only intended to prescribe a certain and convenient mode of proceeding by persons who, upon principles of national comity, might claim the assistance of our courts when necessary, to enable them to assert their rights to property, or to enforce their remedies as creditors in this State, under wills which had been executed in another State or country, and properly established as such in the courts of that country. This construction makes the different provisions of the law harmonize with each other. It gives to it all the efficacy to which it by fair construction ought to receive, and at the same time in no manner impairs the other salutary provisions of the law, which experience has dictated as necessary to protect persons in performing testamentary acts against fraud and undue influence.

Thus viewing the main question and those minor ones necessarily growing out of it, we are of opinion that the court below erred in receiving the authenticated copy of the will under the facts in the record as evidence on behalf of the appellees,

and therefore reverse the decree and remand the cause for distribution, according to the prayer of the petition and the evidence in the record to support the same.