IN RE LAST WILL AND TESTAMENT OF JOHN LONGSHORE.

WILLIAM S. HEWS et al., Appellees, v. AMANDA B. LONG-
SHORE, Appellant.

WILLS: Foreign Probate of Domestic Will.  The will of a dom-
1  iciled resident of this state will not be admitted to probate in
   this state on a duly authenticated record of probate in a for-
   eign state.  (Sec. 3294, Code, 1897.)

CONSTITUTIONAL LAW:  Full Faith and Credit Clause—Foreign
2  Probate of Domestic Will.  The "full faith and credit" clause
   of the Federal Constitution imposes no obligation on the courts
   of this state to recognize the foreign probate of a domestic will.

*Appeal from Poweshiek District Court.*—D. W. HAMILTON,
Judge.

MARCH 16, 1920.

THIS case involves an appeal from the action of the
court in admitting to probate in this state a domestic will
probated in a foreign state, on the production of the record
of the probate in such foreign state.—*Reversed and re-
manded.*

*J. H. Patton,* for appellant.

*Rayburn & Lyman,* for appellees.

GAYNOR, J.—This is an appeal from the action of the
court in admitting a will to probate under the provisions
of Section 3294 of the Code of 1897.  It appears that the
testator was, at the time of his death, a
resident of this state, owned large property
interests in this state, and was domiciled
at Grinnell, Poweshiek County, in this
state; that he was temporarily in the state of Nebraska,
and, while there, was taken sick and died.  Eleven days be-

fore his death, he executed the will now sought to be pro-
bated. At the time of his death, he was the owner of 160
acres of land in Richardson County, Nebraska. This will
was presented to the probate court of Richardson County,
Nebraska, and there duly probated. A certified copy of the
record of probate, duly authenticated, as required by our
statute, was presented to the district court of Poweshiek
County, with an application to have the same admitted to
probate upon the authenticated record aforesaid. The court
admitted the will to probate as a foreign will, over the ob-
jection of parties interested, and appeal is taken to this
court.

The only question for our determination is whether or
not, under the provisions of Section 3294, the will should
have been admitted to probate as the last will and testa-
ment of decedent.

There is no question made as to the probate in Nebras-
ka. He had real estate in Nebraska, and the Nebraska
court had jurisdiction to probate the will. There is no
question that the original record of probate in said court
was duly authenticated and attested, as required by the
laws of this state. The determination of this case involves
the proper construction to be given to Section 3294, its
scope and purpose, and what is intended to be covered by
it. This section deals only with foreign wills, probated in
the court of the domicile of the testator: that is, where a
will has been duly probated at the domicile of the testator,
in a foreign state, it may be admitted to probate in this
state as a foreign will, upon compliance with the terms of
the statute.

In dealing with the subject of wills, and in consider-
ing the legal effect of the probate thereof, a distinction be-
tween domestic wills and foreign wills must always be kept
in mind. When Section 3294 says, "a will probated in any
other state or country shall be admitted to probate in this

state, without the notice required in the case of domestic wills," it means a will probated at the domicile of the testator in a foreign state, and when it says, "on the production of a copy thereof and of the original record of probate, authenticated," etc., it means the production of a copy of the will, properly probated, at the domicile of the testator in a foreign state. Wills so probated may be admitted in this state without notice, under the provisions of Section 3294. It follows that only such wills as are shown to have been probated at the domicile of the testator in a foreign state are admitted to probate in this state, under the provisions of this section. *Original probate* may be had in any state or territory in which the testator has property at the time of his death, although the testator was not domiciled in that state at the time of his death; but the mere production of the statutory evidence of the probate of a will in a state other than that of the domicile of the testator, though he have property in that state, does not entitle it to probate in this state, under the provisions of this section. The probate of a will in a state other than the domicile of the testator is strictly a proceeding *in rem,* and, while allowable, affects only the property and rights in that property within the jurisdiction of that state, and has no extraterritorial force. It is much like all proceedings *in rem,* in which jurisdiction is acquired, not *in personam,* but of the property alone. A court in all proceedings *in rem* of necessity determines the right of the party to the relief prayed for, but enters judgment only against the property within its jurisdiction. A judgment thus rendered will not serve as a basis for any proceeding in a foreign jurisdiction, and no rights *in personam* or *in rem* can be urged under such a judgment in a foreign state. It is not binding upon anything except the property and rights in the property against which it **operates.**

It follows that the probate of a will in any state or

territory, other than the domicile of the testator, does not serve as a basis for the probate of the will in the state of the domicile, under the provisions of Section 3294. It cannot be assumed that it was the intention of the legislature that a domestic will, the last will and testament of one domiciled in this state, can be probated in a foreign jurisdiction, and by such probate secure its admission here as a foreign will, without notice. Wills probated at the domicile of the testator, and presented to the probate courts of this state for probate, are treated as foreign wills, and are admitted to probate in this state under the statutes hereinbefore referred to. But a domestic will, admitted to probate in a state other than that of the domicile, is not a foreign will. It is simply a domestic will, probated in a foreign state, and is not admissible to probate in this state, under the provisions of the statute. If this were tolerable, it would follow logically that, if one domiciled in this state should die, leaving a will, this will, without being admitted to probate in this state, could be taken to a foreign state, no matter how far distant from the state of the domicile, and there probated, and, by such probate, bind the courts of the domiciliary state, without notice to parties interested. The logic of such holding would be that, though a person died domiciled in this state, with large property interests here, and but small property interests in other states far distant from the state of his domicile, his will might first be probated in any of the foreign states in which he had property, and by such probate, under Section 3294, be admitted to probate in this state, without notice to the persons adversely interested. As bearing upon the question here under consideration, see *Sturdivant v. Neill*, 27 Miss. 157, 165; *Bate v. Incisa*, 59 Miss. 513. The statute of Mississippi provides:

"Authenticated copies of wills proved according to the laws of any of the United States, or the territories

thereof, or any country out of the limits of the United States, and touching or concerning estates within this state [Mississippi], may be offered for and admitted to probate in said courts."

In the *Bate* case, the Supreme Court of Mississippi said:

"In the case we are now considering, the will is not such as the statute was passed for. The chancery court * * * did not have jurisdiction over an authenticated copy of it, but could only admit to probate the original will. [It appears that the will was probated in the courts of Tennessee.] * * * But, if the record of the probate of the will in Tennessee had shown that it was duly proved by the three attesting witnesses [as required by the laws of Mississippi], an authenticated copy could not have been admitted to probate here, because the statute does not embrace it."

It was further held that the provisional statute authorizing the admission of foreign wills, upon presentation of duly authenticated copies of the probate in a foreign state, related only to the probate of foreign wills of testators domiciled in the state in which the probate was had, and not to the probate of wills made by persons domiciled in the state of Mississippi, probated in a foreign state. It was said:

"This will was provable in Tennessee, whose courts had jurisdiction of it, as affecting property situated in that state; but, the domicile of the testatrix being in Mississippi, her will must be proved here according to our law, in order to be operative on property situated in this state."

The syllabus of the case reads:

"An authenticated copy of the probate in Tennessee of a will whose maker is domiciled in Mississippi, is not admissible to probate in this state under Code 1871, Section 1105, so as to operate on property here, although exe-

cuted in the foreign jurisdiction where the testatrix died. and where it operates on her property there situated."

In the case of *Succession of Gaines,* 45 La. Ann. 1237, the court had to deal with a question very similar to the one here, especially so far as the legal phase of this case is concerned. It seems that one Myra Clark Gaines died in the city of New Orleans, on the 9th day of January, 1885, leaving two wills, one dated New Orleans, January 8, 1885, and another dated New Orleans, January 5, 1885. These wills were presented for probate to the civil district court for the parish of Orleans. The will of January 5th was resisted, on the ground that it had been superseded by the will of January 8th, and was defective in form. Resistance was made to the will of January 8th on the ground that it was a forgery. These matters were tried out in the civil court, resulting in a finding and decree that the will of January 8th was fraudulent and forged, and not entitled to probate, and that the will of January 5th was defective in form, and, therefore, not entitled to probate, reserving, however, the right of the executors to propound the same for probate at the domicile of the deceased. Appeals were taken from this. While these appeals were pending in the Supreme Court of Louisiana, the will of January 5th was duly admitted to probate in the surrogate court of Kings County, New York, that being the domicile of Myra Clark Gaines at the time of her death. On the 11th day of December, 1892, a certified copy of the probate in the state of New York was submitted to the civil district court of the parish of Orleans, for admission to probate. Objections were made to its admission in the parish of Orleans, because it had been adjudged by the Orleans probate court that it was not a valid will, and not entitled to probate, and because Mrs. Gaines did not die in the state of New York, but died domiciled in the state of Louisiana, and had no property within the jurisdiction of the surrogate court of Kings

County, New York, and further, because the will was made
in Louisiana, and rejected by its courts, and could, there-
fore, have no legal efficacy in Louisiana, though admitted
to probate elsewhere.  These objections were sustained by
the civil district court of the parish of Orleans, and an
appeal taken to the Supreme Court of the state.  On ap-
peal, it was found affirmatively that Myra Clark Gaines
was, at the time of her death, an actual resident of and
domiciled in Kings County, New York, at the time of her
death; that she was temporarily in the state of Louisiana;
that, while temporarily in Louisiana, the will in question
was executed.  The Supreme Court held that, when the sur-
rogate court of Kings County rendered a decree, admitting
the instrument dated January 5th to probate as the last will
and testament, and the same was duly and legally such;
that particular fact must be taken as fixed by the judgment,
and given effect in the Louisiana court.  The court, in dis-
cussing the case, said:

"The *domicile* of the deceased being the place of the
opening of the home or mother succession,—the succession
proper,—the court of that domicile is unquestionably au-
thorized to have presented to it an instrument purporting
to be the last will and testament of the deceased, and, after
due proceeding and inquiry had, to determine whether it be
such last will, under the laws of the place of the domicile.
In the matter before us, the surrogate, in a proceeding to
which the surviving executor and the legal heirs and next of
kin of Mrs. Gaines were parties, had propounded before his
court for probate the will of the 5th of January, 1885, and,
after hearing, pronounced it the last will and testament of
Mrs. Gaines, probated it, and ordered its execution."

The fourth ground of opposition assigned, and one
which was sustained by the district court, was "that a will
made in Louisiana and rejected by its courts, could have
no effect in Louisiana, although it may be admitted to pro-

bate elsewhere." The court said:

"In maintaining this ground of opposition, refusing the application, and rejecting the will, we are of the opinion the court erred. * * * The question before him was not whether the instrument purporting to be Mrs. Gaines' will should be probated here, as a matter of original probate. That had been once attempted in his court, and failed, the court, however, properly recognizing the right of the parties in interest to propound it later for probate at the domicile. The parties in interest acted upon that suggestion. * * * When brought a second time before the civil district court, the case was presented under entirely different conditions, * * * the object of the demand being also essentially different. In the case at bar, the court was not called on to deal directly with and on the instrument as a matter still *in pais*, for the purpose of determining whether it was really the last will and testament of the deceased. The question had passed on to and been determined by a court competent and authorized to do so, and was merged in the judgment of that court. What the court was asked to do was to recognize and give effect to the judgment itself, and, as resulting from that judgment, to recognize and give effect to the adjudication made on it that a particular instrument, identified with and by the judgment, was really the last will and testament of Mrs. Gaines, made and executed according to the laws of the state in which she had her domicile, at the time of its making and at the time of her death."

The court further said:

"Her succession was instantly opened by the fact of her death at the place of her domicile. That result was totally independent of her having property at that time in the county of Kings, or in the state of New York. Whether, when she died, her succession was, as to its character, a legal or a testamentary one, was a question necessarily to

be determined at the place of legal opening. When the succession opened, it opened as a single and entire succession. The unity of succession was not destroyed by the fact that portions of the property might be located in different jurisdictions, and in different states, and because, from motives of public policy, or the operation of local laws, the property so situated might be withdrawn partially or entirely from the control of the laws of the state of the domicile, or subjected, for the same reasons, to special restrictions."

But, if probated in any other state than the state of his domicile, the probate has no extraterritorial force, and operates only upon the property within the jurisdiction of the court so probating, and an authenticated copy of such proceedings in probate, upon presentation in a foreign state, does not justify the probate of the will at the place of domicile.

Under authority and reason, therefore, we hold that the place of original probate is the place of domicile; that a probate in any other state than the state of the domicile

2. CONSTITUTIONAL LAW : full faith and credit clause : foreign probate of domestic will.

can have no extraterritorial force; that such probate does not entitle the will to admission in the state of the domicile, even under the good-faith and credit clause, or under statutes such as we have in this state. We hold that the statute means no more than to say that the will of a nonresident, admitted to probate according to the laws of the state of his domicile at the time of his death, may be admitted to probate in this state upon the production of a duly authenticated copy of the probate, without other proof or notice. And further, we hold that the state of the domicile has original jurisdiction to probate.

This construction of the statute closes the door to possible fraud, such as we have suggested.

We think the court was wrong in admitting the will of

John Longshore to probate in the district court of Poweshiek County, as a foreign will, upon the mere production of a certified copy of the record of the probate in a foreign state. We do assume, for the purposes of this contention, that the district court of Richardson County, Nebraska, had jurisdiction to probate this will. That jurisdiction rested on the thought that he had property in the state of Nebraska, which was affected by the will. But the admission to probate there affected only the property within the jurisdiction of that court, and the rights of the parties in the property within the jurisdiction of that court. The right to present the will for original probate in this state is not foreclosed.

For a further discussion of the question here under consideration, see note to *Tremblay v. Aetna Life Ins. Co.,* 97 Me. 547 (94 Am. St. 521, 558); also, *Sullivan v. Kenney,* 148 Iowa 361.

The case is, therefore, reversed and remanded, with directions to proceed further in harmony with the opinions herein expressed.—*Reversed and remanded.*

Weaver, C. J., Ladd and Stevens, JJ., concur.